ABRAHAM GERSHKOWITZ, JOHN A. POLICASTRO & CO., INC., PATSY PALANGIO, TIMOTHY J. RYAN, IRVING TRANSIT CO., AND VAN BUREN BUS CO., A CORPORATION, PROSECUTORS, v. BOARD OF PUBLIC UTILITY COMMISSIONERS OF THE STATE OF NEW JERSEY, RESPONDENTS.

Argued October 16, 1939—Decided January 16, 1940.

Before Justices PARKER, BODINE and PERSKIE.

For the prosecutors, *Israel B. Greene.*

For the Board of Public Utility Commissioners, *John A. Bernhard.*

For Public Service Co-ordinated Transport, *William H. Speer.*

BODINE, J. The writ of *certiorari* in this case brings up for review an order of the Board of Public Utility Commissioners approving a permit for the operation of five buses on a line hereafter mentioned. The permit not granted in its entirety was for the operation of buses over the following streets in the city of Newark: "From Newark-Belleville City Line, via State Highway No. 21, Riverside Avenue, Chester Avenue, Herbert Place, Broadway, Harvey Street, Ogden Street to the McCarter Highway, Raymond Boulevard, Raymond Plaza, west to the Pennsylvania station; returning via Raymond Plaza, east to Raymond Boulevard, Mulberry Street, McCarter Highway, thence via the same route to the Newark-Belleville City Line. When said highway is completed, buses will operate on that highway from the Newark-Belleville Line to Raymond Boulevard, and from Mulberry Street to the Newark-Belleville City Line."

The board found: "The proposed operation will provide a direct service to the Pennsylvania Railroad station from the area adjacent to the Passaic river north of Mount Pleasant Cemetery between Broadway and McCarter Highway not now served by any other facility in the immediate area. The nearest available service is that by the buses operated on Broad street, and on Broadway passing the intersections of Herbert Place, Chester avenue, Grafton avenue and Verona avenue with McCarter Highway. The distance to Broadway from McCarter Highway is one thousand two hundred feet and from that highway to Summer avenue is two thousand feet. The nearest available direct service to the Pennsylvania station from McCarter Highway at the intersection of the streets just

indicated is on Summer avenue, approximately two-fifths of a mile from the proposed route. This service is now being furnished by the applicant."

It approved a route as follows: "From Newark-Belleville City Line, via State Highway No. 21, Riverside avenue, Chester avenue, Herbert Place, Broadway, Harvey street, Ogden street to the McCarter Highway, Raymond Boulevard, Raymond Plaza, west to the Pennsylvania station; returning via Raymond Plaza, east to Raymond Boulevard, Mulberry street, McCarter Highway, thence via the same route to the Newark-Belleville City Line," subject to the following restriction: "That no passengers shall be accepted or discharged on this route between Broadway and Herbert Place and Harvey street and North Broad street. If and when State Highway Route No. 21 is completed, the applicant may renew its application if it desires to operate over the new portion of said route, and on such application the question of convenience and necessity over that portion of the route at that time can be determined upon hearing after due notice to all parties in interest."

It is argued that the board was without jurisdiction to approve the consent because the same was granted by the director of public affairs of the city of Newark and not by the "Board or body having control of the Public streets in the municipality" affected. *R. S.* 48:4-3. The utility board's approval is given after hearing and a determination that the privilege or franchise is necessary and proper for the public convenience and interest. *R. S.* 48:2-14. We do not think we need pass upon the point because Newark is governed by a city commission. The officer signing the consent had, by express grant, control of the public streets. The consent granted was: "subject to the terms or conditions now imposed or hereafter to be imposed by an ordinance or regulation of the City of Newark, N. J., or any law of the State of New Jersey." The consent appeared regular upon its face and being expressly subject to the control of the city government it should not be questioned by the prosecutors in the present action. The Board of Public Utility Commissioners had only to pass upon the question as to whether it was necessary and proper for the public convenience and interest. It

still has control of the operation of the buses. *Whitehead* v. *Board of Public Utility Commissioners,* 108 *N. J. L.* 258. The proofs sustain the action taken.

It seems captious to challenge the form of municipal consent when full power over the same is expressly reserved to the governing body. By ordinance, if necessary, the whole matter can be controlled. It is, therefore, quite unnecessary to pass upon the decision in *Trenton and Mercer Traction Co.* v. *City of Trenton,* 97 *N. J. L.* 84; *affirmed,* 98 *Id.* 297. Clearly, the consent granted in this case differs in scope and formality from those condemned in certain public utility board decisions.

There is no statute of this state or decision of this court cited which indicates that the Board of Public Utility Commissioners may not deny part of the application or modify the same. Their power is to determine how much of the privilege and franchise is necessary and proper for the public convenience and interest. If all, they can so express themselves. If the proofs show that some part is not necessary for the public convenience and interest, they are bound so to determine.

The consent and permit are also challenged because McCarter Highway is not entirely completed at present, dead ending at Mount Pleasant Cemetery. Perhaps the point is that the grant is premature. It is highly probable that it may be, but we do not regard the point as significant. In times when transportation facilities are much needed, lack of preparation for the proper handling of traffic should not await the completion of every road improvement.

The prosecutors are not concerned with rights of the other municipalities to protest the surrender of the operation of bus permits in the city of Newark. Any municipality affected by a lack of service within its bounds may proceed in the interest of its own inhabitants.

The evidence examined with care supports the findings of the commissioners and they have, we think, properly disposed of all questions raised.

The writ will be dismissed, with costs.